## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **DIANE L.  MOORE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 3:12-CV-02120-RDP** |
| | } | |
| **MICHAEL J.  ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

### MEMORANDUM OF DECISION

Diane L. Moore ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Act.  *See* 42 U.S.C. §§ 405(g) and 1383(c).  After full review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her applications for disability, DIB, and SSI on September 15, 2009, in which she alleged that her disability began on April 30, 2008.[1]  (Tr. 114-28).   The Social Security Administration initially denied Plaintiff's applications on November 25, 2009.  (Tr. 74-75).  Plaintiff then requested and received a hearing with Administrative Law Judge J. Edward Tease ("ALJ") on December 21, 2010.  (Tr. 85-91).  In his decision, dated February 8, 2011, the ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A)

---

[1] Plaintiff later amended her application to allege an onset date of August 17, 2009.  (Tr. 143).

of the Act from August 17, 2009, through February 8, 2011.  (Tr. 24-35).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  (Tr. 1). 42 U.S.C. §§ 405(g) and 1383(c)(3).

At the time of the hearing, Plaintiff was 49-years old with a ninth-grade education.[2]  (Tr. 41-42, 87, 114, 150).  Plaintiff previously worked as a hotel housekeeper until August 26, 2009. (Tr. 142).  Plaintiff alleges that she has been disabled since August 17, 2009, due to arthritis. (Tr. 143, 145).

During the hearing, Plaintiff testified that she cannot stay focused because of her headaches, back pain, and hip pain, and that those collectively keep her from working.  (Tr. 60). When the ALJ asked Plaintiff what she had done in the last year, she responded that she would "sit around in pain."  (Tr. 44).  Plaintiff further testified that she lies down and watches TV most days as a result of the pain.  (Tr. 52).  Plaintiff estimated that she would have to lie down or recline for five hours during a normal eight to five work day.  (Tr. 57).

Plaintiff testified that her back pain lasts about five to six hours a day and, on a scale of one to ten (ten being the highest), her back pain averages in the range of five or six.  (Tr. 54-55). Plaintiff stated that she also suffers from hip pain all day, every day, and estimated her pain on the scale to be an eight or a nine.  (Tr. 54-56).  Plaintiff described her left hip pain as a "shooting pain" that could extend anywhere from the hip down to her knee or ankle and claimed that it is caused by standing or walking too long.  (Tr. 58).  Plaintiff also described her headaches as an everyday occurrence, stating that they come and go in a "fluttering" manner.  (Tr. 59).

---

[2] Plaintiff's disability report indicates that she completed the tenth grade; however, she testified at the hearing that she entered but did not complete the tenth grade. *Compare* (Tr. 150) *with* (Tr. 42).

The ALJ examined Plaintiff's treatment history for these alleged ailments during the hearing.  Plaintiff testified that she went to Chicago, Illinois for three days twice in the last year for two separate funerals.  (Tr. 46-49).  Plaintiff visited the emergency room on both trips complaining of head, hip, and back pain.  (*Id.*).  The only medication prescribed to Plaintiff during these visits was Ibuprofen.  (Tr. 49).  Although Plaintiff testified that one doctor had suggested hip surgery, she could not remember the doctor's name and did not pursue the option because she did not have insurance.  (Tr. 50-51).  Plaintiff also claimed that she did not have a regular doctor in Florence, but saw Dr. Timothy Ashley within the last year for "excruciating pain" in her hip and back.  (Tr. 51-52).  Plaintiff did not try an exercise program as suggested by Dr. Ashley, but claimed that she attempted walking and concluded that it was "not for [her]." (Tr. 53).  Plaintiff testified that she was not currently taking prescription pain medication, but a friend had previously paid for some prescription medicine from a doctor in Rogersville a few months prior to her testimony.  (Tr. 63-65).

Plaintiff testified that she previously worked at a Knights Inn and had worked there for approximately five months before she left due to a spider bite.  (Tr. 43-44, 62-63).  Plaintiff claimed she could not return to work because she "couldn't bear the pain anymore," and was unable to do the required amount of walking or bending.  (*Id.*).  While describing her personal life, Plaintiff testified that she currently does not have a driver's license and does not drive.  (Tr. 42, 45).  She stated that she lives in a friend's house and he pays the bills.  (Tr. 43).  She does her shopping with an electric cart and tries to do housework for about an hour or so, but mentioned that someone helps her with cooking, cleaning, and laundry.  (Tr. 45, 60).

The record contains numerous medical records filed in support of Plaintiff's claims. Plaintiff was first treated by Dr. Timothy Ashley, on August 18, 2009, for hip pain that Plaintiff

reported to be "mildly severe" and "continuous." (Tr. 220-21). Dr. Ashley diagnosed Plaintiff with osteoarthritis and noted that her hip and leg x-rays contained no acute abnormality except for osteoarthritis. (*Id*.). He suggested that Plaintiff lose weight, take calcium, and maintain good weight-bearing exercises such as walking, running, or swimming. (*Id*.). Dr. Ashley encouraged Plaintiff to walk and recommended thirty minutes daily as a minimum. (*Id*.).

Plaintiff visited Dr. Ashley again on September 21, 2009, for a checkup concerning an insect bite on her left breast and for hip pain, which had allegedly prevented her from working or walking. (Tr. 218-19). Dr. Ashley determined that the insect bite was resolved and diagnosed Plaintiff with leg pain, prescribing Ibuprofen and Robaxin. (*Id.*). Plaintiff received starter samples of Ibuprofen and was encouraged again to walk 30 minutes each day. (*Id.*). Dr. Ashley also advised Plaintiff to get an MRI of her left hip and a second opinion if the pain management did not work. (*Id.*). Finally, Dr. Ashley noted that Plaintiff planned to apply for disability and did not like her current job. (*Id.*).

Plaintiff saw Dr. Timothy Martin for a consultative examination on November 10, 2009. (Tr. 227-28). Plaintiff's primary complaints were lower back and left hip pain. (*Id.*). However, Dr. Martin noted that when Plaintiff described her hip pain, she placed her hand over her left buttock as the site of the pain instead of her hip. (*Id.*). Plaintiff told Dr. Martin that her pain increases when she stands for longer than twenty minutes or walks for longer than fifteen minutes. (*Id.*). She also claimed she is unable to lift or carry weight greater than thirty pounds. (*Id.*). Plaintiff denied problems with activities of daily living such as bathing or dressing, but did report difficulty with activities such as bending or squatting. (*Id.*). Dr. Martin noted that Plaintiff did not use an assistive device, but had mild difficulty getting on and off the exam table. (*Id.*). Dr. Martin diagnosed Plaintiff with sciatica and osteoarthritis in the left hip. (*Id.*).

Plaintiff visited her local emergency room at Eliza Coffee Memorial Hospital twice in March 2010. (Tr. 241-74). During her first visit, Plaintiff complained of having a headache since November 2009 and hip pain for years. (Tr. 255, 260). Both the CT scan of her head and her physical exam were normal. (Tr. 257, 261, 264). Plaintiff was diagnosed with headaches and arthralgia and prescribed Fioricet. (Tr. 258). During Plaintiff's second visit to the emergency room she claimed to be in a motor vehicle accident[3] in November 2009. (Tr. 249, 253). As a result, she claimed she had "twitching" in both temples. (*Id.*). Although Plaintiff complained of pain in both hips, the nurse noted no acute distress. (Tr. 249). Anaprox was prescribed and other medications were directed to be continued as prescribed. (Tr. 247).

Plaintiff was also examined at the Cook County Bureau of Health Services in Chicago, Illinois twice in June 2010. (Tr. 275-85). During both visits Plaintiff complained of hip pain and throbbing in her head, mentioning that she was in a bus accident in November 2009, but did not suffer a loss of consciousness. (*Id.*). Plaintiff was diagnosed with left hip pain due to mild osteoarthritis and prescribed Ibuprofen. (*Id.*). Regarding her "head throbbing," the doctors noted no "significant concerning" neurological signs, but commented that they would observe. (*Id.*).

Plaintiff submitted a medication list during the hearing which indicated she was taking Ibuprofen as prescribed by Dr. Ashley in 2009 and had discontinued the Toradol and Robaxin as prescribed by the Cook County Bureau in 2009-10 due to a lack of insurance. (Tr. 209). Plaintiff was also using several non-prescription remedies, including Extra Strength Advil, a heating pad, and a heating rub. (*Id.*).

Additionally, Plaintiff submitted functional and disability assessments for the record. In the functional assessment completed by Plaintiff on October 10, 2009, she stated that she cared

---

[3] The court recognizes that Plaintiff also refers to this incident as a "bus accident."

for her grandson, pain affected her sleep, and she had difficulties dressing, bathing, and using the toilet.  (Tr. 178-85).  Plaintiff claimed to go outside daily, shop twice a month, and handle her finances.  (Tr. 181).  She also alleged that her disability affected her lifting, walking, squatting, sitting, bending, kneeling, standing, and reaching, but indicated that she could lift twenty pounds.  (Tr. 183).  Plaintiff claimed she could only walk fifteen minutes before she needed to rest and also uses a cane "a lot" when she walks.  (Tr. 183-84).

Plaintiff also completed a disability report on November 30, 2009, in which she claimed that arthritis limited her ability to work.  (Tr. 145).  She indicated she walked with a limp and pain kept her from sleeping, sitting for too long, and picking up things.  (*Id.*).  Plaintiff stated she was taking Ibuprofen for her pain as prescribed by Northwest Alabama Community Health.  (Tr. 149).  A disability form completed by her attorney's office on December 21, 2009, stated that Plaintiff had no new conditions and no changes had occurred regarding her current conditions.  (Tr. 192).  She claimed that she was not taking any prescription or non-prescription medications for her conditions.  (Tr. 193).

Dr. Richard Whitney conducted an RFC assessment of Plaintiff on November 25, 2009.  (Tr. 229-36).  Dr. Whitney found Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds.  (Tr. 230).  He also opined Plaintiff could stand, sit, or walk for six hours in an eight hour workday.  (*Id.*).  Dr. Whitney determined Plaintiff should be limited to occasional participation in all postural functions[4] except climbing ladders, ropes, and scaffolds, which he indicated Plaintiff should never do.  (Tr. 231).  He also restricted Plaintiff's environmental exposure to extreme cold, vibrations, and typical hazards such as machinery and heights.  (Tr. 233).

---

[4] Postural functions include climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  (Tr. 231).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.

20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing

significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. §

404.1520(b).   Second, the ALJ must determine whether the claimant has a medically

determinable impairment or a combination of medical impairments that significantly limits the

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such

impairment, the claimant may not claim disability.  (*Id.*).   Third, the ALJ must determine

whether the claimant's impairment meets or medically equals the criteria of an impairment listed

in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and

404.1526.   If such criteria are met, the claimant is declared disabled.   20 C.F.R. §

404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under

the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the

claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step,

the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant

work, then the claimant is deemed not disabled.  (*Id.*).  If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. §

404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ found that Plaintiff met the insured status required of the Act through December 31, 2013, and that she had not engaged in substantial gainful activity since August 17, 2009, her alleged onset date of disability.[5] (Tr. 26). Based upon the medical evidence, the ALJ concluded that Plaintiff suffered from the severe impairments of osteoarthritis of the left hip and sciatica.[6] (Tr. 26). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 27).

The ALJ concluded Plaintiff has the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 27). The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they were inconsistent with the RFC assessment. (Tr. 29).

---

[5] The ALJ noted that although Plaintiff worked as a hotel housekeeper through August 26, 2009, the work activity after her alleged onset date of disability did not rise to the level of substantial gainful activity. (Tr. 26).

[6] Although Plaintiff testified her headaches, in part, limited her ability to work (Tr. 60), the ALJ determined that since Plaintiff did not list any medications for her headaches (Tr. 209) and doctors saw no significant concerning neurological signs for her head throbbing (Tr. 275-85), Plaintiff's headaches were not a severe impairment. (Tr. 27).

The ALJ cited several inconsistencies to support his decision.  First, in the October 2009 function report completed by Plaintiff, she said she had difficulty bathing, dressing, and toileting due to her restricted ability to bend.  (Tr. 32, 179).  However, the ALJ found Plaintiff's complaints inconsistent with Dr. Ashley's records from September 2009, where after a visit for hip pain, the doctor suggested an increased exercise schedule.  (Tr. 32, 218-21).  The ALJ also noted Plaintiff claimed she used a cane when she walked, but the medical records do not indicate that any doctor noted she used (or needed) a cane.  (Tr. 33, 184, 214-85).  Plaintiff indicated to Dr. Martin in November 2009 that she could lift thirty pounds, which is consistent with the RFC of light work.  (Tr. 33, 227).  The ALJ stated that although Plaintiff went to the emergency room twice in 2010, she complained primarily of headaches and did not allege that the motor vehicle accident increased her hip pain.  (Tr. 33, 242-68).  Plaintiff testified she had to spend approximately five hours each day lying down to relieve her pain, but no doctor has advised Plaintiff to spend that much time resting; rather, her doctor told her to exercise.  (Tr. 33, 57, 221).  The ALJ found Plaintiff's testimony that a doctor suggested hip replacement surgery inconsistent with the record because she failed to present any medical records to support the testimony.  (Tr. 33).  Finally, the ALJ concurred with the State Agency medical consultant's determination that Plaintiff can perform light work because it is consistent with Plaintiff's daily activities and the medical evidence of record.  (Tr. 33, 229-36).

The ALJ found Plaintiff cannot perform any past relevant work because her past work requires at least a medium exertional level, which Plaintiff cannot perform under her current RFC.  (Tr. 34).  However, the ALJ determined jobs exist in significant numbers in the national

economy that Plaintiff can perform[7] and therefore, Plaintiff has not been under a disability as defined by the Act from August 17, 2009 through February 8, 2011.  (Tr. 34-35).

## III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed and benefits awarded or remanded for further development.  (Pl.'s Mem. 8).  Plaintiff argues that the RFC findings as to the entire period are not supported by substantial evidence in light of subsequent events.  (*Id.*).  In support of her argument, Plaintiff contends that the ALJ should have obtained a consultative examination based on *all* conditions of record and provided for a vocational examination so that vocational implications could properly be assessed.  (Pl.'s Mem. 8-9).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c)(3) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

---

[7] This finding of "not disabled" is directed by Medical-Vocational Rule 202.17, based upon a RFC for full range of light work, considering Plaintiff's age, education, and work experience.  (Tr.  34).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

### A.   The ALJ Properly Developed the Record

Plaintiff argues that because the bus accident was not mentioned in Dr. Martin's consultative examination in the early part of November 2009 or referenced by the State Agency's physician in the latter part of November 2009, it is reasonable to conclude that the accident occurred after both consultative examinations. (Pl.'s Mem. 7). As a result of this conclusion, Plaintiff contends that the bus accident is an indication of a change in Plaintiff's condition that is likely to affect her ability to work. Therefore, pursuant to 20 C.F.R. § 404.1519a(b)(4),[8] Plaintiff argues that the current severity of her condition was not established, and as such, the ALJ is required to order a consultative examination. (Pl.'s Mem. 8). The court disagrees.

The ALJ's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed

_____

[8] Plaintiff cites section (b)(5) of the C.F.R. in her brief; however, the relevant section has been moved to (b)(4).

decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007).

Plaintiff visited a local emergency room twice in March 2010 and complained of headaches and left hip arthritis pain, but her physical examinations and CT scan were normal. (Tr. 242-68).  The nurse noted that Plaintiff mentioned a motor vehicle accident in November 2009, but stated no acute distress was noticed.  (Tr. 249).  Plaintiff denied treatment for her headaches prior to the arrival of her first visit and did not allege that the motor vehicle accident increased her hip pain.  (Tr. 253, 268).  Plaintiff also visited a clinic in Chicago twice in June 2010 seeking treatment for throbbing in her head and hip pain that "comes and goes." (Tr. 276-85).  During both visits, Plaintiff made the doctors aware she was in a bus accident in November 2009.  (*Id.*).  The doctors diagnosed mild osteoarthritis in her left hip, prescribed Ibuprofen, and found no significant concerning neurological signs for her head throbbing.  (*Id.*).

As the government's brief accurately points out, a change in condition can warrant a new consultative exam, but this is only required when "the current severity of [Plaintiff's] impairment is not established." (Def.'s Mem. 13) (citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).  Here, the doctors who saw her during these four visits mentioned above were aware of her motor vehicle accident.  However, after all four visits, none of the doctors placed any limitations upon Plaintiff and after the two visits in Chicago, Plaintiff was prescribed only Ibuprofen to treat her symptoms.   The failure to prescribe prescription pain medication can mitigate against a claimant's allegation of constant and severe pain.  *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).  Therefore, based upon the treating physicians' diagnoses and treatment plans

for Plaintiff after the alleged motor vehicle accident,[9] this court concludes that there was substantial evidence to support the ALJ's determination of the severity of Plaintiff's impairments, and he was not required to order a consultative examination.

> **B.     The ALJ's RFC Determination Contains Appropriate Specificity and is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is inadequate because it does not include postural or environmental limitations found in Dr. Whitney's RFC assessment, causing the ALJ's RFC to lack the specificity of a function by function analysis required under Social Security Ruling ("SSR") 96-8p.  (Pl.'s Mem. 6).  Plaintiff contends that the ALJ should have accounted for the State Agency medical source opinion or explained why the additional restrictions were not included in his findings.  (Id.).  Plaintiff also argues that without vocational expert testimony, it is not possible to determine whether other jobs in the light work range would have been specifically included or excluded in terms of postural function, as well as environmental settings.  (Id.).

Contrary to Plaintiff's claim, the ALJ did perform a function by function analysis to determine Plaintiff's RFC in accordance with SRR 96-8p.  The ALJ began his analysis by examining Plaintiff's testimony, including Plaintiff's description of her headaches, back and hip pain, as well as her description of daily functioning.  (Tr. 28-29).  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's testimony regarding intensity, persistence, and limiting effects were not credible due to their inconsistent nature with the record.  (Tr. 29).  The ALJ detailed all of Plaintiff's medical records, including multiple function reports, diagnoses and treatment plans by her physicians, and compared them to Plaintiff's alleged impairments and

---

[9] It is also important to note that Plaintiff failed to provide any evidence of treatment as a direct result of the alleged motor vehicle accident, or any evidence that the motor vehicle accident occurred for that matter.

functional restrictions.   (Tr. 29-34).   Specifically, the ALJ indicated that although Plaintiff testified she would have to lay down five hours a day, this testimony was contradicted by Dr. Ashley who encouraged her to exercise.  (Tr. 33, 57, 220-21).  The ALJ also mentioned that in Plaintiff's function report she claimed that she could lift twenty pounds; Dr. Martin agreed with this claim, stating that Plaintiff was limited to lifting no more than thirty pounds.  (Tr. 32-33, 183, 227-28).   These conclusions are consistent with the State Agency's RFC assessment, in which Dr. Whitney opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds.  (Tr. 229-36).  Dr. Whitney also stated that Plaintiff could stand, sit, or walk for six hours in an eight hour workday.  (*Id.*).  Each of these limitations of Plaintiff's functional capacity parallels the regulatory definition of light work.  In the regulations, "light work" is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).  Light work also "limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day." *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citing SSR 83-10).  An ALJ complies with SSR 96-8p by examining a claimant's functional limitations and then expressing her RFC in exertional levels.  *Freeman v. Barnhart,* 220 F. App'x 957, 960 (11th Cir. 2007).

The ALJ considered Plaintiff's functional limitations, and supported his assessment by describing Plaintiff's functional capacity in exertional levels as defined by the definition of "light work."  (Tr. 27).  Thus, by concluding Plaintiff could perform a full range of light work, the ALJ determined that Plaintiff could lift no more than twenty pounds at a time, could lift ten pounds frequently, and can stand or walk six hours in an eight-hour work day.  The ALJ disregarded Plaintiff's complaints of nonexertional limitations, such as her difficulty to dress or use the toilet due to pain from her hip, because these claims were inconsistent with exercise treatment plans

prescribe by Dr. Ashley.  (Tr. 32).  Therefore, the court finds the ALJ's RFC assessment of a full range of light work was supported by substantial evidence and satisfied the suggested guidelines of SSR 96-8p.

Plaintiff's contention that the ALJ erred by not including postural and environmental limitations found in the State Agency's RFC assessment lacks merit.  The final responsibility for deciding a claimant's RFC is reserved for the ALJ, based upon the entire record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c).  Relevant evidence for this inquiry includes not only medical assessments, but also medical reports from treating and consulting sources, and descriptions and observations of the claimant's limitations made by the claimant and others.  *See* 20 C.F.R. § 404.1545(a)(3).  However, "[t]he Commissioner's regulations do not require the ALJ to base his RFC finding on an RFC assessment from a medical source." *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) (citing 20 C.F.R. § 404.1546(c)).  Therefore, it was within the ALJ's discretion to exclude the postural and environmental limitations from his RFC finding because the RFC is a finding reserved explicitly for the ALJ and his opinion need not be based exclusively on the State Agency's consultative examination.

The ALJ also adequately explained his exclusion of Plaintiff's postural and environmental limitations.  After acknowledging Dr. Whitney's assessment and generally agreeing with him that Plaintiff could perform light work, the ALJ stated "[this] determination is consistent with [Plaintiff's] daily activities and the medical evidence of records." (Tr. 33).  The court concludes that this statement demonstrates the ALJ did not use the postural and environmental assessments made by Dr. Whitney because he found they contradicted the medical evidence of record.  The ALJ had previously described this contradiction when he dismissed Plaintiff's nonexertional complaints due to their inconsistency with Dr. Ashley's

suggested exercise programs.  (Tr. 32).  Therefore, the ALJ sufficiently explained his reasons for excluding the postural and environmental limits found by the State Agency's consultative examination.

Finally, the court rejects Plaintiff's assertion that vocational expert testimony was required to determine jobs available to Plaintiff.  There are two circumstances when the ALJ is required to consult with a vocational expert: (1) when a claimant's exertional limitations prevent her from performing a full range of employment or (2) when a claimant has nonexertional impairments that significantly limit basic work skills.  *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004).   Nonexertional impairments can include having "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. 404.1569a(c)(1)(vi).  Typically, "[i]t is only when the claimant can clearly do unlimited types of light work. . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (citing *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)).

The ALJ determined that Plaintiff could perform an unlimited range of light work and therefore it was unnecessary for him to request vocational testimony pursuant to the first prong of *Phillips*.  (Tr. 27).  The ALJ also determined, as a result of the inconsistency of Plaintiff's nonexertional complaints with her doctor's treatment methods, that she did not suffer from nonexertional impairments.  (Tr. 32).  As noted above, the ALJ had the authority to disregard the postural limitations suggested by Dr. Whitney in his RFC assessment.  Therefore, because the ALJ determined Plaintiff did not suffer from any nonexertional impairments, he was not required by the second prong in *Phillips* to call a vocational expert.  As such, the court finds that the

16

ALJ's RFC assessment is valid, he thoroughly examined the record, he did not err in using Medical-Vocational Guidelines to determine Plaintiff's ability to find a job without testimony of a vocational expert, and his findings are supported by substantial evidence.

**VI.    Conclusion**

The court concludes that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____26th_____ day of June, 2013.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE